BRUCE (LIVINGSTON v.). See Case No. 8,410.

───

## Case No. 2,047.

### BRUCE et al. v. MURPHY.

[10 Blatchf. 229.][1]

Circuit Court, S. D. New York. Dec. 1, 1872.

CUSTOMS DUTIES—"TERNE TIN"—TARIFF ACT JULY 14, 1862.

"Terne tin," in strips formed by turning over the edges of short plates of the article, and locking them together, and rolling down the edges thus joined, and coating them, in the process, with the same metal as all other terne plates, is liable to a duty of 25 per cent. ad valorem, under the last paragraph of section 8 of the act of July 14th, 1862, (12 Stat. 552), and not to a duty of 35 per cent. ad valorem, as a manufacture or article "not otherwise provided for, of * * * tin or other metal," under section 13 of said act (12 Stat. 557).

[At law. Action by John M. Bruce and others against Thomas Murphy, collector of the port of New York, to recover back duties alleged to have been illegally exacted. Judgment for plaintiffs.]

This case was tried by the court, the parties thereto having consented and waived a jury, as per stipulation on file, according to the statute in such case provided. The court found the following facts: (1) The plaintiffs imported from England into the United States a quantity of "terne tin," and entered the same at the custom house at the port of New York, June 1st, 1870. (2) "Terne tin" was, for many years prior to July 14th, 1862, an article well known to the trade, but only in the form of plates of sizes varying from 10 inches by 12 inches to 20 inches by 28

[1] [Reported by John S. Newberry, Esq.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

inches. (3) In 1861 or 1862, "terne tin" began to be imported in strips many yards in length, which strips are formed by turning over the edges of the short plates and locking them together, and rolling down the edges thus joined, and coating them, in the process, with the same metal as all other terne plates. In this manner, strips of terne tin are made of any desirable length. (4) The "terne tin" imported as aforesaid by the plaintiff was in the form of these long strips last above described. (5) Upon the entry of said importation, the collector classified the same, not as "terne tin," but as a manufacture or article "not otherwise provided for, of * * * tin or other metal," under the 13th section of the act of July 14th, 1862 (12 Stat. 557, fourth paragraph from the top of the page), and assessed a duty thereon of 35 per cent. ad valorem. (6) The plaintiffs objected to that mode of classification and rate of duty, and claimed that the same should have been classified as "terne tin," under the last paragraph of the 8th section of the act of July 14th, 1862 (12 Stat. 552), and subjected to a duty of only 25 per cent. ad valorem. (7) The plaintiffs duly appealed to the secretary of the treasury, within the time limited by law, paid the duties alleged to be thus illegally exacted, under protest, and brought this suit within the time limited by law. (8) The difference between the duties on the aforesaid importation at the rate of 25 per cent. ad valorem, and at the rate of 35 per cent. ad valorem, was $114.30, which sum was paid, in gold, to the United States, under protest, on the 18th of August, 1870, and the plaintiffs now seek to recover it back in this suit.

Stephen P. Nash, for plaintiffs.

Henry E. Davies, Jr., Asst. Dist. Atty., for defendant.

SHIPMAN, District Judge. The rate of duty exacted upon the importation in question was ten per cent. in excess of that fixed by the statute, and, to that extent, illegal. The 8th section of the act of July 14th, 1862 (12 Stat. 552), fixes the rate of duty on "terne tin" at 25 per cent. ad valorem. The law nowhere makes any discrimination between the length of the sheets or plates. It cannot be doubted, that the importation of sheets of any and every length, when each sheet is of one unbroken piece, and made so when first manufactured, would come under this 8th section, and must be classified as "terne tin." Lengthening the sheets, or widening them, would not change the character of the article. Sheets of every length and width are included, without limitation, naturally and aptly, under the head of "terne tin." They were, also, thus included in the act of March 2d, 1861 (12 Stat. 188), as well as in the act of July 14th, 1862. Under both of these acts, sheets varying in length from 14 to 28 inches were imported in large quan-

tities, and were all classified alike and assessed at the same rate of duty, at ten per cent. under the act of 1861, and at twenty-five per cent. under the act of 1862. Merely increasing the length of such sheets, from twenty-eight inches to twenty-eight feet or twenty-eight yards, could not, without additional legislation, change the rate of duty fixed by the act. Such sheets would still be "terne tin," and within the plain and unambiguous meaning of both acts. I apprehend that it can make no difference whether the additional length of the sheets is obtained by rolling them out originally in continuous and unbroken sheets, or by locking the edges of several short sheets together and rolling and soldering them. They are, in either case, "terne tin," in sheets or plates, and, in no just sense, "articles" or "manufactures" of tin, not otherwise provided for, within the 13th section of the act of July 14th, 1862. As I have already stated, the length of the sheets is an immaterial feature, and it is equally immaterial how that length is obtained, whether by rolling out one piece of metal in a continuous and unbroken sheet, with all its particles uniformly welded together, or by mechanically joining several shorter sheets into one long one. Sheets made in either of these ways would be used in the same manner, and for the same purposes. The difference between the two, in point of utility and beauty, would be in favor of the originally continuous and unbroken sheets, instead of those made up of several shorter ones, however joined together. I have no doubt that the plaintiffs are entitled to judgment. Let it be so entered.